UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-61574-CIV-ROSENBAUM

ELZIE FULLER, III,

    Plaintiff,

vs.

EDWARD B. STIMPSON CO., INC.,

    Defendant.

_____/

## ORDER ON MOTION FOR RECONSIDERATION

This matter is before the Court upon Defendant Edwin B. Stimpson Co., Inc.'s Motion for Reconsideration. [ECF No. 75]. Defendant asks this Court to reconsider its Order [ECF No. 69] denying Defendant's request for entry of summary judgment in its favor with respect to the race-discrimination claim brought by Plaintiff. After careful consideration and for the reasons set forth below, the Court grants Defendant's Motion for Reconsideration.

## I. BACKGROUND

Plaintiff Elzie Fuller III filed suit bringing claims for employment discrimination and retaliation against Defendant Edwin B. Stimpson Co., Inc. ("Stimpson"), arising out of Fuller's long-term employment with Stimpson and his subsequent termination in February 2009. *See* ECF No. 1. In his Complaint, Fuller alleged that he was intentionally discriminated against on the basis of his race (*i.e.*, African-American), in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2(a) (Count I) and the Florida Civil Rights Act of 1992, §760.10(1)(a), Fla. Stat. (Count III); that he was retaliated against for engaging in a protected activity under Title VII of the Civil Rights Act, 42 U.S.C. §2000e-3 (Count II), and the Florida Civil Rights Act of 1992, § 760.10(7), Fla. Stat. (Count

IV); and that he was discriminated against under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621, 623(a) and Florida Civil Rights Act § 760.10, Fla. Stat. (Count V) and (Count VI). *Id.*

After the parties engaged in discovery, Stimpson filed a motion for summary judgment against Fuller on all six counts. ECF No. 41. On August 30, 2013, the Court entered an Order granting in part and denying in part Stimpson's Motion for Summary Judgment. ECF No. 69. More specifically, the Court entered summary judgment in favor of Stimpson with respect to Fuller's race-discrimination claims based on an alleged failure to promote (Counts I and III); Fuller's hostile-work-environment claims (Counts I and III), Fuller's retaliation claims (Counts II and IV), and Fuller's age-discrimination claims (Counts V and VI). But the Court denied Stimpson's Motion for Summary Judgment with respect to Fuller's intentional race-discrimination claims based on his termination during a reduction in force (Counts I and III).[1]

The Court's denial of summary judgment on this claim rested primarily on the fact that Stimpson utilized a Workforce Review spreadsheet that identified employees by race when it finalized the names of the individuals to be included in the reduction in force ("RIF"). Although Stimpson claimed that it used the Workforce Review spreadsheet only after deciding the employee to be included in the RIF and only to ensure that the RIF did not adversely affect one race over another, the Court concluded that credibility determinations precluded the entry of summary judgment. More specifically, the Court found that a genuine issue of fact existed with respect to Stimpson's motivations for creating and using the Workforce Review spreadsheet.

---

[1]Although Stimpson set forth an argument in its Motion for Summary Judgment addressing any potential claims for disparate-impact race discrimination, a review of the Complaint revealed that Fuller did not assert a disparate-impact claim based upon race.

Stimpson now files its Motion for Reconsideration, in which it seeks for the Court to reconsider its denial of Stimpson's Motion for Summary Judgment on Fuller's race-discrimination claim based on the need to prevent manifest injustice. ECF No. 75. According to Stimpson, summary judgment should be granted on the sole remaining count for race discrimination because, unbeknownst to the Court at the time that it issued the Order denying summary judgment on the race-discrimination claim, Stimpson is a government subcontractor subject to Executive Order 11246 and was bound by federal regulations to maintain an affirmative action plan. In this regard, Stimpson was required to consider the potential impact of the RIF on protected categories prior to implementation of the RIF. Additionally, Stimpson argues that the record evidence demonstrates that in making adjustments to the list of employees to be included in the RIF, to the extent that it considered race at all, Stimpson regarded race as a favorable factor since it retained two additional African-American employees who otherwise would have been included in the RIF.

Fuller opposes the Motion for Reconsideration on three grounds. First, Fuller argues that the Motion for Reconsideration is untimely under Rule 59(e), Fed. R. Civ. P., because it was filed thirty-five days after the Court's ruling on the Motion for Summary Judgment. Second, Fuller states that Stimpson had no federal contracts at the time of the RIF, so Stimpson cannot show that it was subject to either the non-discrimination or the affirmative-action obligations imposed on federal contractors pursuant to Executive Order 11246. Third, Fuller asserts that Stimpson misapprehends the requirements of Executive Order 11246 and states that it is meant to provide equal opportunity in employment to individuals, regardless of their race, and not to maintain racial balance.

## II.  DISCUSSION

### A. Standard for Reconsideration

"[R]econsideration of a previous order is an extraordinary remedy to be employed sparingly." *Burger King Corp. v. Ashland Equities, Inc.*, 181 F. Supp. 2d 1366, 1370 (S.D. Fla. 2002) (citing *Mannings v. Sch. Bd. of Hillsborough Cnty.*, 149 F.R.D. 235, 235 (M.D. Fla. 1993)). "The 'purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence.'" *Id.* at 1369 (quoting *Z.K. Marine Inc. v. M/V Archigetis*, 808 F. Supp. 1561, 1563 (S.D. Fla. 1992)).  Only three major grounds generally justify reconsideration: "(1) an intervening change in the controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice."  *Id.* (citing *Offices Togolais Des Phosphates v. Mulberry Phosphates, Inc.*, 62 F. Supp. 2d 1316, 1331 (M.D. Fla. 1999); *Sussman v. Salem, Saxon & Nielsen, P.A.*, 153 F.R.D. 689, 694 (M.D. Fla. 1994)).  Defendant maintains that reconsideration of the Court's prior Order is necessary to prevent manifest injustice.

### B.  Timeliness of Motion for Reconsideration

Fuller first argues that Stimspon's Motion for Reconsideration is untimely under Rule 59(e), Fed. R. Civ. P., because Stimpson was required to file the motion within twenty-eight days of the Court's ruling on the Motion for Summary Judgment.  Because Stimpson filed its motion thirty-five days after the Court issued its Order, Fuller contends that the Court should decline to consider the motion.

The Court disagrees.  While it is true that under Rule 59(e), Fed. R. Civ. P., motions to alter or amend a judgment must be filed within twenty-eight days after the entry of the judgment, the present motion may fairly be said to have been filed pursuant to Rule 60(c), Fed. R. Civ. P., because

it seeks relief from an order. And, Rule 60(c)(1), Fed. R. Civ. P., provides that a motion seeking relief from a prior order must be made within a "reasonable time." Stimpson's filing of the Motion for Reconsideration within thirty-five days of the date of the issuance of the Order on the Motion for Summary Judgment is reasonable. First, in the presence of Fuller, Stimpson advised the Court within twenty-eight days of the issuance of the Order that it desired to file a motion for reconsideration and further represented the basis for the motion, and the Court authorized Stimpson to file its motion. Second, Fuller has identified no cognizable prejudice resulting from Stimpson's filing of its Motion for Reconsideration within thirty-five days of the issuance of the challenged Order. For these reasons, the Court declines to deny the Motion for Reconsideration on timeliness grounds.

**C.  Stimpson Was Subject to Executive Order 11246 When it Decided to Terminate Fuller**

Fuller next argues that Stimpson has not shown that it was subject to Executive Order 11246 when it decided to terminate Fuller. Fuller points to deposition testimony of Stimpson's president, Scott Thomas, during which Thomas stated that the company had no federal government contracts in 2008 when the RIF was being considered nor was it a government contractor in 2012, when Thomas testified. Additionally, Fuller emphasizes that Thomas's declaration, submitted with the Motion for Reconsideration, does not contain any facts that prove that Stimpson was a government subcontractor as the Motion for Reconsideration claims. According to Fuller, Thomas vaguely states that Stimpson "*has been* a government subcontractor." *See* ECF No. 75-1 at 3 (emphasis added). Fuller concludes that unless Stimpson held active contracts with the federal government or active subcontracts when the RIF was planned and implemented, it was under no obligation to maintain an affirmative-action program.

In response, Stimpson avers that Fuller's argument has no factual basis. In this regard, although Stimpson agrees that during his deposition, Thomas testified that Stimpson had no federal contracts at the time of the RIF, Stimpson clarifies that it was a government *subcontractor* at the time of the RIF. Indeed, according to Stimpson, it had multiple subcontracts with contractors for the United States government.

As proof of its contention, Stimpson submitted an amended declaration of Thomas that states, "[A]t the time of the RIF, Stimpson had multiple government sub-contracts for amounts above the minimum dollar amount to become subject to the same Executive Order 11246. As such, Stimpson was required to have an affirmative action pan, which it has maintained for many years and continues to maintain in order to receive additional sub-contracts with the U.S. government." *See* ECF No. 80 at 10. In his amended declaration, Thomas also clarifies that he answered truthfully during his deposition that Stimpson was not a government contractor. Thomas emphasizes, however, that he was not asked whether Stimpson had any subcontracts, and, if he were asked the question, he would have replied "yes." *See id*.

Based on the sworn statement of Thomas that Stimpson had multiple subcontracts at the time of the RIF, and because Thomas's declaration is unrefuted, the Court finds that Stimpson was subject to Executive Order 11246 at the time of the RIF. *See* 41 C.F.R. § 60-1.1 (noting that subcontractors are subject to Executive Order 11246). Accordingly, the Court declines Fuller's invitation to deny the Motion for Reconsideration on the grounds that Stimpson was not subject to Executive Order 11246.

**D.  Reconsideration is Necessary to Prevent Manifest Injustice**

Finally, Fuller contends that the Motion for Reconsideration should be denied because Fuller misapprehends the requirements of Executive Order 11246 and its implementing regulations. More specifically, Fuller argues that the provisions of Executive Order 11246 do not prescribe racial quotas and are not meant to maintain racial balance but, rather, are intended to provide equal opportunity in employment to individuals regardless of their race. Put simply, Fuller argues that Stimpson cannot rebut a *prima facie* case of race discrimination by showing that it was striving towards a non-discriminatory bottom line. According to Fuller, layoff and termination decisions are to be made without taking the race of any employee into account for any reason.

As noted in the Court's prior Order, Title VII provides that an employer may not "discharge any individual, or otherwise . . . discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2.  A plaintiff may prove a claim of intentional discrimination through direct evidence, circumstantial evidence, or through statistical proof. *Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1274 (11th Cir. 2008) (citation omitted). Because the record contained no direct evidence of race discrimination, in considering Defendant's Motion for Summary Judgment, the Court evaluated whether Fuller could establish his race-discrimination claims through circumstantial evidence and the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

To demonstrate a prima facie case of discrimination under the *McDonnell Douglas* framework, a plaintiff must show that (1) he is a member of a protected class, (2) he was subject to an adverse employment action, (3) his employer treated similarly situated employees who were not

members of his class more favorably, and (4) he was qualified for the job or benefit at issue. *Gillis v. Ga. Dep't of Corr.*, 400 F.3d 883, 887 (11th Cir. 2005).

In this case, the parties did not dispute that Fuller is a member of a protected class and that he suffered an adverse employment action. Nor did a dispute appear to exist that Fuller was qualified for his job.

Rather, in seeking summary judgment, Stimpson argued that Fuller did not establish the third element of his *prima facie* case because he had not provided evidence that Stimpson treated other similarly situated individuals who were not members of his class more favorably. While Fuller pointed to no similarly situated comparator, the Court found this omission not to doom Fuller's claim for race discrimination because he was able to produce other circumstantial evidence that would support an inference of the employer's racially discriminatory intent. *See Lockheed-Martin Corp.*, 644 F.3d at 1327-28 (citing *Rioux v. City of Atlanta*, 520 F.3d 1269, 1281 (11th Cir. 2008). In situations involving "a reduction in force, a modified *prima facie* formulation may apply, which allows a case of discrimination to be established by presenting evidence showing, not dissimilar treatment, but that the employer intended to discriminate against the plaintiff on the basis of . . . race." *Vega v. Invsco Group, Ltd.*, 432 F. App'x 867, 870 (11th Cir. 2011); *See also Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1331 (11th Cir. 1998). To establish intent, a plaintiff must proffer evidence that the defendant (1) consciously refused to consider retaining the plaintiff because of his race or (2) regarded race as a negative factor in the retention consideration. *Padilla v. N. Broward Hops. Dist.*, 270 F. App'x 966, 971 (11th Cir. 2008).

In denying summary judgment, the Court concluded that Fuller had set forth evidence that could lead a reasonable jury to believe that Stimpson acted with discriminatory intent when

conducting its RIF. In this respect, the Court noted that Stimpson created the Workforce Review spreadsheet to aid the company in its decisions concerning the RIF. The Workforce Review spreadsheet, in turn, categorized employees on the basis of race, along with other characteristics. For instance, the "Power Press" listing, which Fuller is a part of, is subdivided according to each employee's race, so, for example, all non-clerical employees in the Power Press group and identified by Stimpson as "black" are grouped together. The Workforce Review spreadsheet contained similar groupings for employees identified by Stimpson as "white," "Hispanic," and "Asian," respectively. In addition, for each grouping by race, the spreadsheet provides a calculation of the percentage of employees of that race to be included in the RIF, under the heading "Go % By Race." In denying summary judgment, the Court found that the existence of the Workforce Review spreadsheet could lead a reasonable juror to conclude that Stimpson made race a factor in its decision-making process.

The denial of summary judgment was also based on the deposition testimony of Thomas, during which Thomas confirmed that Stimpson employed the Workforce Review spreadsheet to racially balance the termination decisions, and some initial termination decisions were changed on that basis. The Court recognized that Stimpson claimed that its intent was not discriminatory and that it consulted the Workforce Review spreadsheet only after termination decisions were made and for the purpose of ensuring that no group would be adversely affected. In denying summary judgment in favor of Stimpson on the race-discrimination claim, the Court emphasized that Stimpson admitted to categorizing its employees by race in connection with the RIF, and it further conceded that it changed some termination decisions on that basis. In light of these facts, the Court concluded that whether Stimpson impermissibly made employment decisions on the basis of race — that is, whether Stimpson consciously refused to consider retaining Fuller because of his race or regarded

race as a negative factor in the retention consideration — involved a credibility determination to be made by a jury. Ultimately, the Court concluded that, taking the facts in the light most favorable to Fuller, the Workforce Review spreadsheet and its utilization by Stimpson in the RIF decision-making process created a sufficient basis of support for an inference of discriminatory intent.

Because a genuine issue of fact existed concerning whether Stimpson intended to discriminate on the basis of race when it conducted its RIF, the burden shifted to Stimpson to rebut the inference of discrimination. As its legitimate business reason for terminating Fuller, Stimpson contended that the dire economic situation in 2009 and sharp decline in Stimpson's sales necessitated the RIF. Stimpson also pointed to Fuller's unsatisfactory attendance record as the reason that he was selected for inclusion in the RIF. The Court determined that these reasons satisfied Fuller's burden of production. *See Sims v. MVM, Inc.*, 704 F.3d 1327, 1334 (11th Cir. 2013) (employer articulated a legitimate non-discriminatory reason for including plaintiff in reduction-in-force); *Mitchell v. City of LaFayette*, 504 F. App'x 867, 870 (11th Cir. 2013) (eliminating a position to avoid unnecessary expenditure may be a legitimate, non-discriminatory reason for an employment decision); *see also Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 769-70 (11th Cir. 2005) (employer's burden is exceedingly light and is satisfied as long as the employer articulates a clear and reasonable non-discriminatory basis for its actions). And, because Stimpson met its burden of providing a legitimate, non-discriminatory reason for its actions, under the *McDonnell Douglas* framework, the burden shifted back to Fuller to show that Stimpson's reasons were merely pretextual.

A plaintiff may show pretext either directly, by persuading the court that a discriminatory reason more likely than not motivated the employer, or indirectly, by demonstrating that the employer's proffered reasons are unworthy of credence. *Castillo v. Roche Lab., Inc.*, 4678 F. App'x

859, 863 (11th Cir. 2012). In the end, the analysis requires determination of whether a discriminatory animus motivated the employer. *Id.*

Ultimately, although Stimpson alleged that race was not the reason that it included Fuller in the RIF, the Court focused its attention on the fact that Stimpson had categorized its employees within each department and job classification by their respective races in the Workforce Review spreadsheet. And, the Court found that it was for the jury to determine whether Stimpson's explanation with respect to its creation and use of the Workforce Review spreadsheet was credible. *See Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012) (credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of the judge deciding a motion for summary judgment) (citation omitted). Overall, in denying Stimpson summary judgment, the Court concluded that a reasonable juror could find that Stimpson's classification of its employees by race evidenced that race was a negative factor with respect to termination if a juror did not find credible Stimpson's explanation for the spreadsheets.

Stimpson has now provided evidence that establishes that it was subject to Executive Order 11246 at the time of the RIF, which further explains why Stimpson created the Workforce Review spreadsheet in the first place. The United States Department of Labor's Office of Federal Contract Compliance Programs ("OFCCP") enforces Executive Order 11246, which prohibits federal contractors and subcontractors from discriminating in employment decisions on the basis of race, color, religion, sex, or national origin. Executive Order 11246 also requires contractors and subcontractors to take affirmative action to ensure that an equal opportunity for employment is provided in all respects of their employment. *See* http://www.dol.gov/compliance/laws/comp-

eeo.htm (last visited December 23, 2013).  Moreover, the OFCCP requires each contractor, "as a condition of having a federal contract, to engage in a self-analysis for the purpose of discovering any barriers to equal employment opportunity."  *See* http://www.dol.gov/ofccp/regs/compliance/aa.htm (last visited December 23, 2013).

All government contracting agencies, except for those that are specifically exempt, are required to include in every government contract certain provisions, including the following:

> During the performance of this contract, the contractor agrees as follows:
>
> 1. The contractor will not discriminate against any employee or applicant for employment because of race, color, religion, sex, or national origin.  The contractor will take affirmative action to ensure that applicants are employed, and that employees are treated during employment, without regard to their race, color, religion, sex, or national origin.  Such action shall include but not be limited to the following: employment, upgrading, demotion, or transfer; recruitment or recruitment advertising; *layoff or termination*; rates of pay or other forms of compensation; and selection for training, including apprenticeship.

*See* 30 Fed. Reg. 12319 Section 202 (emphasis added); *see also* http://www.dol.gov/ofccp/regs/statutes/eo11246.htm (last visited December 23, 2013).  Further, Section 203 of Executive Order 11246 directs each contractor subject to the provision to file, and cause each of its subcontractors to file, Compliance Reports with the contracting agency or the Secretary of Labor as may be directed.  The Compliance Reports must contain, among other information, employment statistics of the contractor and each subcontractor.  30 Fed. Reg. 12319 Section 203.

Executive Order 11246 also requires a government contractor to have in place an acceptable

affirmative-action program, which identifies problem areas. *See* 41 C.F.R. § 60-2.17. In meeting this requirement, the contractor must "perform in-depth analyses of its total employment process to determine whether and where impediments to equal employment opportunity exist." *Id.* At a minimum, the contractor must evaluate,

> (1) The workforce by *organizational unit and job group* to determine whether there are problems of minority or female utilization (i.e., employment in the unit or group) or of minority or female distribution (i.e., placement in the different jobs within the unit or group);
>
> (2) Personnel activity (applicant flow, hires, *terminations*, promotions, and other personnel actions) to determine whether there are selection disparities;
>
> (3) Compensation system(s) to determine whether there are gender-, race-, or ethnicity-based disparities;
>
> (4) Selection, recruitment referral, and other personnel procedures to determine whether they result in disparities in the employment or advancement of minorities or women; and
>
> (5) Any other areas that might impact the success of the affirmative action program.

41 C.F.R. § 60-2.17(b) (emphasis added). Additionally, an acceptable affirmative-action program must include an internal audit and reporting system. *See* 41 C.F.R. § 60-2.17(d). More specifically, the contractor must "develop and implement an auditing system that periodically measures the effectiveness of its total affirmative action program." *Id.* In this regard, the system must "[m]onitor records of all personnel activity, including referrals, placements, transfers, promotions, terminations, and compensation, at all levels to ensure the nondiscriminatory policy is carried out." 41 C.F.R. § 60-2.17(d)(1).

As noted above, in situations involving a RIF, a modified *prima facie* formulation applies,

which does not require a plaintiff to produce evidence that his employer treated other similarly situated individuals who are not members of his class more favorably. Instead, a plaintiff may produce other evidence showing that his employer intended to discriminate against him on the basis of his race. *Vega*, 432 F. App'x at 870. To establish intent, a plaintiff must proffer evidence that the defendant (1) consciously refused to consider retaining the plaintiff because of his race or (2) regarded race as a negative factor in the retention consideration. *Padilla*, 270 F. App'x 966 at 971).

Previously, the mere creation of the spreadsheet, in which Stimpson classified its employees by race, raised a significant question regarding Stimpson's motives with respect to the selection of employees for the RIF. Indeed, the issue of discriminatory intent arose because it was particularly suspicious that an employer would create a spreadsheet classifying its employees by race. A valid explanation for the behavior now exists in light of the fact that Stimpson was a government subcontractor at the time of the RIF and was subject to Executive Order 11246.

As a government subcontractor, Stimpson was required to perform in-depth analyses of its workforce and was required to keep statistics on the racial makeup of its workforce. Accordingly, whereas the mere creation of the Workforce Review spreadsheet previously raised concerns of Stimpson's potential discriminatory intent with respect to Fuller, in light of the fact that Stimpson was required by Executive Order 11246 to prepare information contained in its Workforce Review spreadsheet, the Court now concludes that the spreadsheet's existence alone cannot serve as the basis for denying summary judgment. Indeed, under the circumstances, it would be manifestly unjust to find that the creation and use of the Workforce Review spreadsheet is circumstantial evidence of discriminatory intent when Stimpson was required to keep the statistics regarding race contained within the spreadsheet. *See United States v. New Orleans Public Service, Inc.*, 553 F.2d 459, 465

(5th Cir. 1977) (Executive Order 11246 has the force and effect of law), *abrogated on other grounds*, (citations omitted). Put simply, Stimspon should not be punished for complying with Executive Order 11246.

In opposing the Motion for Reconsideration, Fuller argues that the intent of Executive Order 11246, like Title VII, is to prevent discrimination. Consequently, Fuller asserts that Stimpson was not permitted to make race a factor in deciding who to terminate during the RIF.[2] Fuller relies on *Connecticut v. Teal*, 457 U.S. 440, 455 (1982) and *Craig v. Alabama State University*, 804 F.2d 682, 686 (11th Cir. 1986) in support of its argument. These cases are distinguishable from the instant matter because the opinions in those cases do not reveal that either of the defendants in those cases were bound by Executive Order 11246. Moreover, significantly, those cases also involve issues relating to disparate impact — where intent is not at issue — and not disparate treatment, like the pending matter, where intent is central to the analysis. Additionally, the cases cited by Fuller are inapplicable because any alleged "racial balancing" by Stimpson in this case did not affect Fuller. No evidence whatsoever exists in the record that the determination to include Fuller in the RIF was later revised after Stimpson created the Workforce Review spreadsheet. Instead, the evidence reflects that Stimpson originally selected Fuller for termination because of his attendance and that decision never changed.

Moreover, the termination decisions that Stimpson did modify following a review of the

---

[2]Fuller also appears to suggest that Stimpson's Motion for Reconsideration should fail because Stimpson has not presented its affirmative-action plan to the Court for review. The particulars of Stimpson's affirmative-action plan, however, are not relevant to the issues at hand because this case does not involve a challenge to the affirmative-action plan. Rather, the fact that Stimpson was bound to adhere to the requirements of Executive Order 11246 drives the analysis here.

Workforce Review spreadsheet reveal that, if anything, being African-American was regarded as a positive factor in Stimpson's determination with respect to the RIF. Specifically, the evidence before the Court is that three changes were made to the list of individuals originally included in the RIF. The first involved a husband and wife, who were originally both selected for termination but, to avoid rendering the entire household unemployed, Stimpson amended its decision and terminated only one of them. Second, Stimpson decided that, in the accounting department, an African-American female who had been recommended for termination would not be terminated. Third, in the maintenance department, Stimpson chose not to terminate an African-American male who had been selected for termination before review of the spreadsheet. Accordingly, the evidence refutes Fuller's assertion that Stimpson regarded race as a negative factor — an element that Fuller must meet in order to establish a *prima facie* case of race discrimination.[3]

Nor has Fuller refuted the application of Executive Order 11246 or presented other evidence of discriminatory intent in this case. Fuller has not established a *prima facie* case because he has provided no evidence that Stimpson either consciously refused to consider retaining Fuller because of his race or regarded Fuller's race as a negative factor in the retention consideration. Thus, no genuine issue of material fact remains regarding discriminatory intent, and Stimpson is entitled to the entry of summary judgment on the race-discrimination claim. Accordingly, the Motion for Reconsideration is be granted to prevent manifest injustice.

---

[3] In *Teal*, the Supreme Court recognized that a nondiscriminatory "bottom line" and an employer's good-faith efforts to achieve a nondiscriminatory workforce might in some cases, "assist an employer in rebutting the inference that particular action had been intentionally discriminatory: Proof that [a] work force was racially balanced . . . is not wholly irrelevant on the issue of intent when that issue is yet to be decided." *See* 457 U.S. at 454 (internal quotation marks and citations omitted). In this respect, the Court distinguished disparate-treatment claims, where intent is at issue, with disparate-impact claims, where the issue of intent does not arise.

## III.  CONCLUSION

For the foregoing reasons, it is **ORDERED and ADJUDGED** that Defendant Edwin B. Stimpson Co., Inc.'s Motion for Reconsideration [ECF No. 75] is **GRANTED**.  Because this decision is dispositive of the only remaining count in the Complaint, judgment will be entered in favor of Stimpson.

**DONE and ORDERED** in Fort Lauderdale, Florida, this 23rd day of December 2013.

_____
ROBIN S. ROSENBAUM
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of record